Okay, we're here this morning on case number 4-2-2-0-8-8-8, People v. Ramey. Appearing for the appellate is attorney Sarah Curry and appearing for the appellee is attorney Luke O'Neill. Ms. Curry, are you ready to proceed with your argument? Yes, I am. Please do so. Good morning, your honors. My name is Sarah Curry and I represent Makisha Ramey. This morning, I'd like to focus my comments on the issues raised in the first two arguments in the brief, but welcome questions on any of the issues raised in the briefs. During Makisha Ramey's interrogation on the night of January 4, 2021, she invoked her right to an attorney and twice invoked her right to remain silent. Not only did the detectives not scrupulously honor these requests, the detectives completely ignored them. For the first 15 minutes of the interrogation, Ramey denied any involvement in the offense. After the detectives told her that her car had been seen leaving her apartment shortly before the shooting and that a car matching the description of her car was observed at the scene, Ramey turned her back to the detectives and said, Okay, I don't have nothing else to say. You can call his baby mama and you can get me a lawyer. Because if you're going to sit here and tell me that if you didn't see no car on the camera, or you all got no proof of any of this, you all need to let me go. Instead of immediately stopping the interrogation as is required, the detectives pushed forward and told Ramey they had her car on the housing camera. Five minutes later, Ramey again turned her body away from the detectives and told them to charge her if they were going to, but she had nothing else to say. Again, the detectives did not immediately stop the interrogation, but tried to convince Ramey to keep talking by telling her, I'm not going to sit here and make you talk if you don't want to talk, but I'm trying to give you a chance to talk. The interrogation continued and Ramey ultimately made incriminating statements. Ramey unambiguously requested an attorney and twice unambiguously invoked her right to remain silent. It may interrupt you for a moment. Just please bookmark where you're at so you can get back to it, because I know you're going to want to talk more about the January 4th interview, but the January 5th interview was more detailed than the January 4th and does not suffer from the same problems that you have identified in the January 4th interview. The state has pointed out that being the case, there's really nothing to argue about there. You indicated in your reply brief that the second statement, the January 5th statement, should be suppressed as a fruit of the poisonous tree. Is there any case law that would suggest a second consecutive statement should be treated as evidence subject to the fruit of the poisonous tree doctrine? Well, thank you for that question, Your Honor. I'd like to kind of step back from what I said in my reply brief regarding the fruit of the poisonous tree here. I think that the second statement is suppressed for the same reason that the first statement is suppressed. If we look, Ramey initiated the second interview that led to the second statement, and yes, she was. But that second statement was really an extension of the first statement. Ramey requested the second interview because she felt like the first interview had not made sense, and she wanted to clarify some points. At this point, the police had still not honored her invocation of her right to an attorney and her right to remain silent. And so re-Mirandaizing her was meaningless because they have made it clear that her right to an attorney and her right to remain silent would not be honored. If we look at the case of Toby Flores, it's very similar to this case. In Flores, the defendant was interviewed by detectives several times, invoked his right to remain silent, and those detectives pushed forward, leading to ultimately the defendant giving an incriminating statement. Several hours later, an assistant state's attorney arrives to interview the defendant, and she re-Mirandaizes him, and he subsequently gives another incriminating statement. The court in Flores found that that second statement also needed to be suppressed. If we look at the four factors to be considered in whether the invocation of the rights were scrupulously honored, two of those factors are not present for that second statement. Yes, there was a passage of time, and yes, she was re-Mirandaized, but the detectives had not immediately halted their interrogation, and the subject of the interrogation was the same. As a result, the court found that since two of those factors were not, the second statement also needed to be suppressed, and that's the case here. And more so, in this case, during that second statement, she did, again, bring up the fact that she didn't have an attorney, and again, the detectives ignored her, telling her, if you don't have a lawyer, they'll appoint one for you, but not listening to her and not scrupulously honoring that invocation of a right to an attorney. Well, are you suggesting that that's, on the fifth, that that was a specific request for counsel? Yes, and especially in light of the previous request for counsel that may have been a little more direct, this was, you know, she still had not been, those requests had not been read worth anything, if there's any meaning to them. She doesn't know, and so she's asking, I don't have a lawyer. She had asked the day before, go get me a lawyer, and nothing had happened, and now she's still trying to figure out how to get these rights, how to invoke these rights, but nobody's listening to her. Okay, I have a question about this. It seems to me, the law is clear that the invocation of a right to remain silent must be unambiguous and unequivocal, and the right to invoke having counsel as well, yet regarding the series of statements you described, there's a video of this, was there not? Yeah. It speaks in the conditional tense, although she says I have nothing else to say, she immediately says, because if you're going to do this, and if you didn't see it, then you need to let me go. In context, why is the court incorrect to view this as something short of the unambiguous and unequivocal right to remain silent and to use, to exercise a right to counsel? Well, I don't have nothing else to say is not ambiguous whatsoever. And that was, again, that was the only part of what she said, and she immediately proceeded to add the other four sentences I just gave you. Why wouldn't a police officer or the court be correct in viewing that all as part of the same statement, and essentially a conditional one, at least in part? Well, first, the detective, as soon as she said, I don't have nothing else to say, the detective should have interrupted her and stopped the interrogation. Okay, but she's right there. So it's your word. It's your position that the burden is on the police to interrupt her to stop her from saying anything more. Is that your argument? I'm saying that they should have. That would have been the best practice to say. Is that required by a US Supreme Court decision? It's required that they halt the interrogation when she says I have nothing else to say. If we look at the case of people. That's not what I asked you. I want to make sure I understand your position here. You're claiming that when she says, okay, I don't have nothing else to say. And even though she is still speaking and part of this discussion, the video shows it. The police at that point are obligated to say, you should stop talking at this time. Stop talking and don't say anything else. Is that your position? I'm not taking a position that they had to interrupt her. But if we look at the entire statement, she unambiguously said she had nothing else to say. She unambiguously said, go get me a lawyer. If we look at the case of people V Cox, in that case, the defendant said, I don't want to answer no more questions. Because I got, I can't help you. And I don't want to dig myself into a hole. Again, there's a little tale on what on the invocation and the court there found that that was an unambiguous assertion of his right to remain silent. That had nothing to do with the conditional, which is present here. Two sentences beginning with it. Isn't that correct? She wasn't conditioning her request to remain silent or her request for an attorney. She's saying, if you're, if you don't have anything, you have to let me go. She's telling them to let her go. She's got nothing else to say. She's not conditioning her right to remain silent or her right to an attorney on anything. She's saying, you don't have anything on me. I don't want to say anything else. You've got to let me go. There's nothing condition. To what extent, even if there was a mistake in letting this in, can the court consider the strength of its case and conclude it's harmless error? This court would have to determine that it was harmless beyond a reasonable doubt. And under the facts of this case, that determination cannot be made. We know that confessions carry extreme. Why not leaving outside the confession? Why isn't the evidence in this case? Totally overwhelming. Without the, uh, without Remy's statement, there's nothing, there's no evidence about what actually transpired during the exact moments of the shooting. Her, her testimony was the only evidence that talked about the exact moments of the shooting. And without her evidence, it's circumstantial. It's the jury was left to determine what, what happened during those exact moments. And the state's case had other holes. The state's whole theory was that this was a premeditated murder. However, there was no evidence that Remy knew who Likes was, that Hubbard had started dating  Uh, the police never looked into Hubbard as a suspect, even though he was there at the scene. And, um, certainly they could have searched his car or taken his hands, uh, looked at his hands for gunshot residue. The precise moment of the shooting. There is no evidence directly, uh, about what happened except for her statement. And without that, the jury was going to have to make a bigger leap, make a bigger speculation. And for that reason, that the, uh, admission of that statement is not harmless beyond a reasonable doubt. If there are no other questions about that first part. I don't see any other questions. You have more time. If you have further argument, however, well, I wanted to touch on the second argument, if that's okay. Yes, please proceed. At Remy's trial, the state was permitted to present a plethora of evidence that Remy was on felony federal probation at the time of the offense in this case, this evidence constituted inadmissible other crimes evidence, and the trial court abused its discretion in denying the defense motion and limiting the state from introducing a trial. Remy's probation officer testified that she gave Remy position permission to travel to Remy's 911 calls placed on January 4th were played for the jury in those calls. Remy twice said that she was on probation and that her probation officer had given her permission to be out of town during the video recordings of the interrogation played for the jury. Remy told the officer federal probation. He twice said she commissioned from her probation officer to travel. And she told the detective she had a felony conviction. This evidence was not relevant to any material issue at trial. The prejudicial impact far outweighed any probative value. The state argued that the evidence was relevant to show consciousness of guilt, premeditation. However, any reference to felony probation was not necessary for the state to make this point. Other evidence established that Remy was not on her way home from Mississippi when she made the 911 calls as she claimed. And other evidence established that Remy traveled from Mississippi from December 28th to January 4th, that there was no reason to introduce the evidence other than to dirty up Remy in front of the jury, making the error even more egregious. The jury was not instructed that it could not consider this evidence for a limited that it should consider this for a limited purpose, thereby leaving the impression with the jury that it could consider this as propensity evidence. The court's error in allowing the state to introduce this evidence was not harmless Between the probation officer's testimony, the 911 calls, the interrogation videos, there was great emphasis based on this evidence. Remy's credibility was critical to her defense, and this evidence only served to persuade the jury that she was a bad person deserving of punishment. If there are no questions, Ms. Remy requests that this court suppress her conviction or a new trial. Okay, thank you for your argument. You will have rebuttal. Mr. McNeil, please. May it please the court, counsel. As for the Miranda argument, it fails for a number of reasons. First, the state maintains this was not a clear and unequivocal request for an attorney. The full statement was already discussed. The first contradiction is that the first thing defendant says is I don't have nothing else to say, and then she continues to say something else, four more sentences to be precise. Then she says you can call his bank mama and you can get me a lawyer, and then states, as Justice Steinman pointed out, two or three ifs. This was literally a qualification of what she just said. This was a challenge to the police's evidence, or at least what the police have told her the evidence is so far. Another interpretation was testified to by an officer that was in the room. He understood the statement to mean that if defendant wished for the officers to contact Michael Hubbard's baby mama to see if she could call an attorney, that's a perfectly understandable interpretation of defendant's statement in context because, like it points out in the video, she continues talking directly after stating this. This was a literal qualification from defendant, not a clear and unequivocal request for an attorney. Even assuming, though, that this first interview after defendant's statement was inadmissible, any error was clearly harmless beyond a reasonable doubt for multiple reasons. First, defendant testified in this case. Her account was inconsistent what she told police. She said in her testimony that Michael Hubbard shot likes the victim. She tells police that it was a struggle for the gun between her and likes and the gun accidentally goes off three times. People versus standards cited in the state's brief shows that even statements suppressed pursuant to a Miranda violation are admissible to impeach a defendant, which is what could have happened here. Even assuming these statements would not have been admissible, they still would have been presented for impeachment purposes and therefore presented to the jury. Well, Mr. McNeil, there's an interesting question that this situation raises. Let's assume for the moment that the trial court erred by denying motion to suppress. Let's assume that this court would conclude that the invocation of a right to counsel and right to remain silent was adequate. The police disregarded it. In context of this case, then the defendant, when she's going to trial, is confronted with the fact that the statement which should have been suppressed was not, and then the state introduces that in its case in chief. Subsequently, she testifies at trial and she tries to explain away the statement or otherwise deal with it having been admitted. Now you're arguing, appropriately, the defendant, when she takes the stand, that she can be impeached, but does the fact that the statement shouldn't have been admitted in the first place, should that affect our assessment of why she is testifying and whether or not this statement can be used for any purpose? In other words, this would be a different case. Let me make myself clear. If, let's say, the motion to suppress had been granted and then the defendant takes the stand, she could clearly be impeached with anything she said on her motion in the tape that had been suppressed. But here it was, the motion to suppress was denied, should that affect our assessment of why she testified and how the video could be used? I would submit this case is an especially bad one to make that argument due to the overwhelming evidence of defendant's guilt, regardless of either of the statements being admissible. I would also submit another reason that argument is bad for this case is that defendant reinitiated contact the next day and basically gave a more detailed account. That statement was clearly admissible. People v. Villa-Lobos, the Illinois Supreme Court case, states the well-settled principle that, quote, once a person invokes their right to counsel during custodial interrogation, they're not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. That's precisely what happened here. People v. Winsett, which defendant cited in her reply brief, states another well-settled principle that where the suspect has made statements after invoking his right to counsel, the prosecution may not use those statements unless the state can establish, one, the accused initiated further discussions with the police, and two, that he knowingly and intelligently waived the right he had invoked. Defendant was properly re-Mirandized the second day. This was also not one of those cases where the gap between the two interviews is 45 minutes or an hour and a half. This was the next day, and defendant wanted to further discuss with police. Defendant wanted to further discuss with police, again, to presumably improve her own position, improve her own lot in life as to this case. This was not a situation where she changed her story, but basically just provided more detail in that interview. So obviously, any error in admitting the first interview was harmless due to this. Defendant still would have presumably testified. Although, I also want to make the point, I don't know if it's really highlighted in any of the briefs, that this wasn't a smoking gun confession by defendant in either of these police interviews or in her testimony at trial. They're all basically excuses to try to point out that she didn't intentionally shoot at the victim's likes. She stated there was a struggle with the gun, and it accidentally went off, and then that trial stated that Michael Hubbard was the one who shot likes. Both of these are, of course, refuted by the surplus of evidence showing defendant's guilt. But the point remains that it's hardly prejudicial for these interviews to even be, even assuming they're erroneously admitted, the prejudice was not much, especially considering the overwhelming evidence. So, and I wanted to go through all of the evidence that has nothing to do with her statements. The undisputed evidence showed she traveled to Mississippi to purchase the firearm used to commit this murder. She was wearing a disguise at the time she drove to the residence where the murder was committed. Her vehicle was seen at the scene of the murder, as well as on the cameras at her housing complex. A defendant was present at the scene of the crime with the gun at the time of the shooting. There were matching shell casings found in defendant's car. The medical examiner testified position of the victim's wounds were consistent with her sitting in the car, not that there was a struggle like defendant claimed. And finally, there was testimony from a correctional officer defendant admitted to shooting the victim here. This was not a jailhouse snitch. This was a correctional officer stating that defendant confessed to the officer that she shot likes. So, clearly the evidence was overwhelming. She was not convicted based on these interviews being played for the jury. The outcome of the proceedings would have been exactly the same if neither one of these interviews were presented to the jury. And I'd like to reiterate defendant's interview claims were no more of an admission than her testimony. Both put her at the scene, but neither admitted that she intentionally shot the victim. And of course, the jury was in the best position to evaluate defendant's credibility when she did testify and properly rejected that testimony in the light of the overwhelming evidence of her guilt. As for the probation argument, it was properly admitted and not unfairly prejudicial. I reiterate this point a lot. The prejudice has to be unfair and undue. Any evidence presented against a defendant at trial is obviously prejudicial. Why else would the state present that evidence? The evidence has to be fairly prejudicial in the balancing test. Was there any mention made of the underlying felony that she was on probation for? There is no mention of the underlying felony. And also, I'd point out that she herself testified and admitted that she was on probation and that the probation officer gave her permission to be in Mississippi. Why was there no limiting instruction given? The defense counsel did not give one. Therefore, it's clearly forfeited for that reason as well. In other words, we're analyzing this for plain error. And this clearly was not plain error. The probative value here is that she lied to the 911 operator that she was on her way back from Mississippi on January 4th. The lie is that she was only allowed to be in Mississippi until January 3rd. That's obviously probative of her consciousness of guilt in this case. And again, there was no undue or unfair prejudice. Any prejudice was from the legitimate probative force of her lie there. And again, as Justice Harris pointed out, there was no mention of the underlying felony. And the defendant did not tender a limiting instruction on this. So, any argument was forfeited. I do want to mention the sentencing argument. It's pretty straightforward. I'll rely on the state's brief. I did not write the brief, but I did notice that the trial court clearly could have considered the fact that the defendant committed this murder in front of the victim's son, who was also in the car. Obviously, the physical well-being of the child and the life of the child was at risk during this murder. It was a shooting. And that child will presumably have long-lasting psychological trauma as well as seeing his mother killed in front of him. These circumstances of the offense could clearly be held or considered an aggravation by the trial court and presumably were. And that's all I would mention about the sentencing in this case. Otherwise, I would stand on the state's brief. And if there are no more questions, I would ask this court to affirm. Okay, Mr. McNeil. I see no further questions. Ms. Curry, do you have any rebuttal? Yes, just a few points, Your Honors. I think when Justice Harris... Get into it, please. Thank you. I'd like to know whether you concede that defendant initiated the January 5 interview. I do concede that she initiated that interview. But as the law that, as the state points out, and in Edwards about reinitiation, that's in the context of invoking a right to counsel or a right to remain silent. And then the interrogation stopping immediately, a period of time passes, and then the defendant reinitiates the conversation. That's what that case law deals with. This is a different situation where she invoked her right to counsel, she invoked her right to silence, and the interrogation continued. There was never a break. Those requests were not honored in any matter at all. And then she reinitiates. It's a different situation because she, at that point, thinks that these rights are meaningless. She thinks that no matter what I say, they're not going to be honored. And the reinitiation is not the reinitiation considered in Edwards, because in that situation, the defendant was given a break. Here, there was no break. And then she made the incriminating statements. I also want to go back to, and Justice Stegman was asking about the qualification of that first request. But in my opening remarks, I didn't get to her second request five minutes after the first, when she said that she had nothing else to say. And the detectives, instead of honoring that request, stopping the interrogation, they tried to convince her to stop talking. They said, I'm not going to sit here and make you talk if you don't want to talk, but I'm trying to give you your chance to talk. That's the opposite of what a detective is supposed to do in that situation. Not convince her to keep talking once she says she has nothing else to say. They should have ceased the interrogation. They should have scrupulously honored that request. And they failed to do it. And it's after that, that she finally made the incriminating statements. I also want to talk a little bit about the impeachment. And Justice Stegman, I think that you're correct in saying if the trial court had suppressed these statements as it should have, it's very likely that she would not have testified at trial. So even if this statement could have been admitted as impeachment, it's likely she would not have testified. And we also have to distinguish substantive evidence between impeachment evidence. If that statement had come in, if she had testified and it had come in as an impeachment, the jury would have been instructed that they could only consider it as it went to her credibility and not as substantive evidence of her guilt, which is very different than a statement coming in as substantive evidence. Counsel, let me follow up on what you just said. I think it's an interesting point, which is why I raised it. I'm not aware of any case law at the moment that says, that would support the proposition that when a trial court is improperly denied a motion to suppress, that the defendant's subsequent testimony and damage, let's say, to the defendant's case from self-testifying can be excused or somehow eliminated or that the error covers that as well. Is there any case law like that? Not that I'm aware of. Are you talking about in terms of the harmlessness of the error that in relying that it could be used as impeachment or? Well, just anything that would say that the defendant's decision to testify under these circumstances shouldn't be used as something which the state can cite to help its case as it has here. Well. If we based on that, whether or not she would decide to testify, that's a whole different situation. Regardless of if the evidence was used, if she did testify and the statement was introduced as impeachment, the state still doesn't get to the harmless beyond a reasonable doubt standard, which is a high standard and that evidence coming in as impeachment would not be substantive and just go to her credibility. On that point, by the way, Mr. McNeil did a nice job of listing the strong evidence against your client, but he didn't mention her 911 calls, which are further incriminating because they're lies and they reveal consciousness of guilt. Otherwise, why would you be making no calls within relatively short time after the murder of Ms. Likes if she herself hadn't been involved? Please say about that. Well, I think, yes, those 911 calls do show a consciousness of guilt or they show that something horrible happened and she panicked and she didn't know what to do. She was scared and she was trying to make things work out the best that she could for her under the circumstances. I think what happened at the moment of the shooting is what the jury was really faced with determining and her statement really was critical in that regard and the suppression of that statement, the error in not suppressing that statement cannot be determined to be a reasonable doubt. I just want to make one quick mention about the other crimes evidence. Counsel, you are out of time, but I thank you both for the court. Thanks you both for your arguments and the case is now submitted and the court will stand in recess until 1 o'clock this afternoon.